

NORTHERN DISTRICT OF TEXAS

**ENTERED**

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

*[signature]*

**Signed June 27, 2007**　　　　　　　　　　　　　**United States Bankruptcy Judge**

---

| | | |
|---|---|---|
| LONE STAR MILK PRODUCERS, INC. | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Adversary No. 06-3528 |
| | § | |
| JOHN H. LITZLER, TRUSTEE, and | § | |
| 2118769 ONTARIO, INC., | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION ON
## MOTIONS FOR SUMMARY JUDGMENT

This opinion addresses the protections afforded to dairy farmers under a provision of the Texas Agriculture Code, and whether those protections remain in the context of a bankruptcy proceeding.

### *Motions Before the Court*

Lone Star Milk Producers, Inc. ("Plaintiff", or "Lone Star"), filed its Motion for Summary Judgment in connection with its Complaint for a declaratory judgment that certain funds in the custody of the defendants are owned by and held in trust for Plaintiff and an order compelling the turnover of such funds.

In response, Defendants have filed their Partial Motion for Summary Judgment for determination of two of the elements of the Plaintiff's case in their favor: (a) whether Lone Star is a "dairy farmer" under section 181.001(2) of the Texas Agriculture Code; and (b) whether Lone Star preserved trust fund protection in accordance with section 181.003(g)(1) of the Texas Agriculture Code.

## I.   JURISDICTION

The Court has jurisdiction pursuant to 28 U.S.C. §§ 1334 and 151, and the standing order of reference in this district.  The matter is core, pursuant to 28 U.S.C. § 157(b)(2)(A), (B) & (O).  This Memorandum Opinion constitutes findings of fact and conclusions of law, pursuant to Federal Rule of Bankruptcy Procedure 7052.

## II.   BACKGROUND FACTS

On October 11, 2006 (the "Petition Date"), an involuntary petition under chapter 7 of the Bankruptcy Code was filed against Americana Foods Limited Partnership ("Debtor" or "Americana") by CB Americana LLC, its general partner.  On October 24, 2006, the Court entered an Order for Relief at which time the Debtor became a debtor under chapter 7 of the Bankruptcy Code.  John Litzler ("Trustee") was appointed Interim Trustee on October 13, 2006, and became the Chapter 7 Trustee upon entry of the Order for Relief.

Prior to the Petition Date, the Debtor was in the business of the manufacture and sale of ice cream products for nationally recognized brands such as Dreyers, TCBY and Godiva to distributors and wholesalers for retail consumption.  After the Petition Date, the Trustee obtained

authority to sell finished ice cream products and certain raw materials to various purchasers for cash.

Lone Star is a cooperative association of approximately 220 active producers of raw milk that act together to market and distribute raw milk for sale, and is principally engaged in the business of marketing and distributing raw milk produced by its members. Prior to the Petition Date, Americana placed orders in the ordinary course of its business for raw milk, cream and condensed milk from Lone Star. From August 1, 2006, to the Petition Date, Lone Star supplied raw milk and skim condensed milk to the Debtor for which Lone Star was never paid. The total principal amount still owed to Lone Star for shipments of raw milk during such period is $585,593.10.

In its Summary Judgment Motion, Lone Star asserts that from August 1, 2006, to the Petition Date, Americana received in excess of $8 million that was deposited directly into its lockbox account for the sale of dairy products, and that, after the petition date, funds continued to be deposited into this account from the sale of ice cream products.

On October 12, 2006, Lone Star filed its Motion for Relief from the Automatic Stay, or, in the Alternative, to Compel the Alleged Debtor to Surrender Trust Funds (the "Lift Stay Motion"). By the Lift Stay Motion, Lone Star sought an order lifting the automatic stay to allow Lone Star to send the Debtor notice to preserve Lone Star's rights under chapter 181 of the Texas Agriculture Code ("Texas Milk Statute"), or, in the alternative, to compel the Debtor to surrender funds held in trust for Lone Star pursuant to chapter 181 (the "Trust Funds"). The Lift Stay Motion was granted on October 16, 2006, to allow Lone Star to deliver notices to protect its rights under chapter 181 of the Texas Agriculture Code.

Lone Star then filed this adversary proceeding against the Debtor and JPMorgan Chase Bank, N.A., on December 1, 2006.  On January 8, 2007, both the Trustee and JPMorgan Chase Bank, N.A. filed their answers denying all liability.   On February 1, 2007, the Court entered a Stipulation and Agreed Order between the parties: (i) Substituting 2118769 Ontario, Inc,. as a Party Defendant for JPMorgan Chase Bank, N.A.; (ii) dismissing JPMorgan Chase Bank, N.A.; and (iii) Directing Deposit of Funds Into Registry of Court (the "Stipulation"). Pursuant to the Stipulation, JPMorgan deposited $1 million of the Post-Petition JPMorgan Funds into the registry of the Court to satisfy any judgment against the Defendants in this matter.

## III.    ISSUES[1]

    a.   Whether the trust created by chapter 181 of the Texas Agriculture Code) is a valid exercise of state law;

    b.   Whether Lone Star is a "dairy farmer" as defined in section 181.001(2) of the Texas Milk Statute;

    c.   Whether section 181.002(a) of the Texas Milk Statute obligated the Debtor and the Trustee to hold the proceeds from the sale of dairy products in trust for the benefit of Lone Star; and

    d.    Whether the proceeds from the sale of dairy products are the property of Lone Star, pursuant to section 181.002(f) of the Texas Milk Statute, or are property of the Debtor's bankruptcy estate, to which Ontario's lien attached.

---

[1] According to the parties and this Court's independent research, this case presents issues of first impression.

IV.    **ANALYSIS**

A.    **Summary Judgment Standard**

Summary judgment is proper if the pleadings, deposition, answers to interrogatories, and admissions on file, together with the affidavits, if any, and other matters presented to the court show that there is no genuine issue of material fact, and that the moving party is entitled to a judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The movant bears the initial burden of articulating the basis for its motion and identifying evidence, which shows that there is no genuine issue of material fact. *Celotex* at 322; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). Material issues are those that could affect the outcome of the action. *Wyatt v. Hunt Plywood, Co. Inc.,* 297 F.3d 405, 409 (5th Cir. 2002).

If the moving party meets this burden, Federal Rule of Civil Procedure 56(c) requires the nonmovant to go beyond the pleadings and show by affidavits, depositions, answers to interrogatories, admissions on file, or other admissible evidence that specific facts exist over which there is a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586-87 (1986); *Wallace v. Texas Tech Univ.,* 80 F.3d 1042, 1046-47 (5th Cir. 1996). The burden is on the non-movant to make a showing sufficient to establish an issue of fact for each element as to which that party will have the burden of proof at trial. *Epps v. NCNB Texas Nat'l Bank,* 838 F.Supp. 296, 299 (N.D. Tex. 1993), *aff'd* 7 F.3d 44 (5th Cir.1993) (citing *Celotex,* 477 U.S. at 322-25, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). The nonmovant's burden may not be satisfied by conclusory allegations and denials, speculation, improbable inferences, unsubstantiated assertions, metaphysical doubts as to the facts, or a mere scintilla of evidence; and legalistic arguments are not adequate substitutes for specific facts showing that there is a genuine issue for trial. *Matsushita*, 475 U.S. at 586-87; *Douglass v. United Servs. Auto. Ass'n,*

79 F.3d 1415, 1428 (5th Cir. 1996) (*en banc*); *SEC v. Recile,* 10 F.3d 1093, 1097 (5th Cir. 1993); *Wallace*, 80 F.3d at 1047.

The court must draw inferences in the light most favorable to the party opposing the motion. *Anderson*, 477 U.S. at 255. However, factual controversies are resolved in favor of the nonmovant "only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *McCallum Highlands, Ltd. v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995), revised on other grounds upon denial of reh'g, 70 F.3d 26 (1995); *see also Wallace,* 80 F.3d at 1048; *S.W.S. Erectors, Inc. v. Infax, Inc.,* 72 F.3d 489, 494 (5th Cir. 1996). The Court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." *McCallum*, 66 F.3d at 92. Once a summary judgment motion is made and properly supported, the nonmovant must go beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

### B. The Trust Created by the Texas Agriculture Code is a Valid Exercise of State Law

The property interests of both the Plaintiff and Defendants in the funds currently held in the registry of the Court are determined under state law. *See Butner v. United States*, 440 U.S. 48, 55 (1979) ("Property interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding."); *see also*, *In re Simpson*, 36 F.3d 450, 452 (5th Cir. 1994).

Chapter 181 of the Texas Agriculture Code provides that, "a milk processor shall hold in trust all payments received from the sale of milk for the benefit of the dairy farmer from whom

the milk was purchased until the dairy farmer has received full payment of the purchase price for the milk." TEX. AGRIC. CODE ANN. § 181.002(a) (Vernon 2004).  The Defendants argue that in enacting the Texas Milk Statute, the Texas Legislature was trying to rewrite the priorities established in the Bankruptcy Code and impermissibly put "dairy farmers" ahead of other creditors.  *See, e.g.*, *County of Orange v. Merrill Lynch & Co., Inc. (In re County of Orange)*, 191 B.R. 1005, 1017 (Bankr. C.D. Cal. 1996).

 The proposition that certain property may be excluded from a bankruptcy estate because the debtor holds only legal title, not equitable title, is not new. *In re Emerald Oil Co.*, 807 F.2d 1234, 1238 (5th Cir. 1987) ("a debtor's estate in bankruptcy does not include property in which the debtor holds bare legal title subject to the equitable interests of third parties.").  In fact, the exclusion of property from a bankruptcy estate by virtue of a constructive trust arising out of state law is not without precedent.  For instance, the Fifth Circuit has held: "Where state law impresses property that a debtor holds with a constructive trust in favor of another, and the trust attaches prior to the petition date, the trust beneficiary normally may recover its equitable interest in the property through bankruptcy court proceedings." *Vineyard v. McKenzie (In re Quality Holstein Leasing)*, 752 F.2d 1009, 1014 (5th Cir. 1985).

However, the ability of a state to create trusts excluding property from bankruptcy estates is clearly not without limitation.  For instance, states may not create laws that are solely meant to manipulate bankruptcy priorities. *Haber Oil Co. v. Swinehart (In re Haber Oil Co.)*, 12 F.3d 426, 435 (5th Cir. 1994).  States also may not create laws that create liens effective only in bankruptcy.  The test alluded to in *Quality Holstein* is that in order to be valid, a state law must have a function outside of bankruptcy.  *Quality Holstein,* 752 F.2d at 1014 n.10; *See* Thomas H.

Jackson, *Statutory Liens and Constructive Trusts in Bankruptcy: Undoing The Confusion*, 61 Am. Bankr. L.J. 287 (1987).

Accordingly, the rule which applies in this case may be stated as follows: a state may create a statute that imposes a trust excluding property from a bankruptcy estate as long as the statute also has valid non-bankruptcy applications and the trust attaches prior to the petition date. Applying the rule to the present facts, this Court concludes that if the Plaintiff can establish the elements of the Texas Milk Statute, such a trust exists in this case, and gives the Plaintiff rights to these funds superior to those of the Defendants.

### C. Lone Star has Proven it is a "Dairy Farmer" Under the Statute

To be afforded the protections of the Texas Milk Statute, an entity must be a "dairy farmer." That term is defined as a "farmer engaged in the business of producing milk for sale to milk processors directly or through a cooperative association of which the dairy farmer is a member." TEX. AGRIC. CODE ANN. § 181.001(2) (Vernon 2004). Lone Star is a cooperative of approximately 220 active producers of raw milk. Section 181.0015 provides that "[w]hen a dairy farmer sells or markets milk through a cooperative association of which the dairy farmer is a member, the cooperative association is considered a dairy farmer." TEX. AGRIC. CODE ANN. § 181.0015 (Vernon 2004). Thus, to receive the protections of the statute, Lone Star must prove that (i) the entities for which it claims payment are "dairy farmers," and that (ii) each dairy farmer in question is a member of Lone Star.

The summary judgment evidence presented shows that the milk supplied to Americana by Lone Star came from twenty-eight suppliers—twenty-five of its members and three other

cooperatives for which Lone Star markets and sells milk in this region.[2]  Lone Star has produced the following summary judgment evidence to show that the entities for whom it claims payment are dairy farmers and that each of these dairy farmers is a member of Lone Star: (1) a signed Membership and Marketing Agreement for each of the twenty-five members whose milk was sold to Americana;[3] (2) The Affidavit of Travis Campsey; (3) its Articles of Incorporation; (4) its Bylaws; and Statements of Members Equity.  Together these show that Lone Star is organized as an agricultural cooperative of dairy farmer members organized under the Ohio Cooperative Law, OH Stat. § 1729.01, *et seq*., within the meaning of the Capper-Volstead Act, 7 U.S.C.A. § 291.

After the withdrawal of the claims of the three cooperatives that supplied milk through Lone Star, Defendants still assert that Lone Star has not shown that all of the remaining suppliers of milk to Americana were members of Lone Star, and Lone Star has not shown that its members are actually dairy farmers.  However, other than their assertions, Defendants have offered no rebuttal evidence to create a fact issue as to the evidence produced by Lone Star that the entities for which it claims payment are "dairy farmers," and that each dairy farmer in question is a member of Lone Star.[4]  Defendants' assertions do not satisfy their burden as to these points.  As stated previously, this burden may not be satisfied by conclusory allegations and denials, speculation, improbable inferences, unsubstantiated assertions, metaphysical doubts as to the

---

[2] At the hearing on the motions for summary judgment, Lone Star dropped its subrogation claim for the three additional cooperatives, and currently is only pursuing its claims for milk supplied by its twenty-five members.

[3] Eight of these Membership and Marketing Agreements were produced after the original document production by Lone Star and were the subject of a separate Motion to Strike that was heard by the Court on the same date as the summary judgment motions and denied.

[4] Basically, the Defendants assert that anything short of trotting all twenty-five dairy farmers down to court to sit on the stand and to swear under oath that they are in fact dairy farmers, who obtained the milk in question from actual cows, and have at all relevant times been members of Lone Star, will not be enough evidence to prove the facts in question.  Actually, after considering the arguments made at the hearing on the summary judgment motions, the Court is not entirely sure if even this evidence would be satisfactory to the Defendants.

facts, or a mere scintilla of evidence.  *See Matsushita*, 475 U.S. at 586-87; *Douglass*, 79 F.3d at 1428; *SEC v. Recile,* 10 F.3d at 1097; *Wallace*, 80 F.3d at 1047.

 

**D.     The Dairy Product Proceeds are Held in Trust for Lone Star**

The Defendants assert that even if Lone Star can show that chapter 181 is a valid exercise of state law and that Lone Star qualifies as a dairy farmer under the statute, Lone Star still cannot prevail against Defendants.  The Defendants argue that the trust created was an implied trust that did not arise until after the bankruptcy case was filed.  Therefore, according to this argument, any dairy product proceeds from the sale of raw milk became property of the Debtor's estate, and subject to the lien of Ontario.

*Chapter 181 Created an Express Trust*

As the parties have argued, trusts are divided into two main categories: express trusts and implied trusts.  Implied trusts are classified either as constructive trusts or  resulting trusts. A constructive trust "is not in reality a trust but is an equitable remedy imposed by law to prevent unjust enrichment from an unconscionable act." 72 TEX. JUR. 3d § 4 (2003); *see also Mills v. Gray*, 210 S.W.2d 985, 987-88 (Tex. 1948) ("a constructive trust generally involves a presence of fraud").   Courts applying constructive trusts treat such "trusts" as equitable liens. *See Meadows v. Bierschwale*, 516 S.W.2d 125, 133 (Tex. 1974) ; *see also United States v. Durham*, 86 F.3d 70, 72 (5th Cir. 1996).  Resulting trusts are also creatures of equity. A court will impose a resulting trust when the court finds that the actions of the parties demonstrate an intent that property be held in trust.  In other words, a resulting trust is a legal fiction created to prevent unjust enrichment.  *See Nolana Dev. Ass'n v. Corsi*, 682 S.W.2d 246, 250 (Tex. 1984).

Express trusts, in contrast to implied trusts, are not devices created by courts for equitable purposes. Rather, the term "express trust" is used to describe the traditional trust concept where one party holds property for the benefit of another party. Often, express trusts are created through the execution of a trust document between the parties. The absence of such a document, however, by no means automatically indicates that the trust at issue is an implied trust. The Fifth Circuit has held that trusts created by statute are express trusts. *See Carey Lumber Co. v. Bell*, 615 F.2d 370, 374 (5th Cir. 1980) (interpreting an Oklahoma statute); *see also, Tholocco v. Magnolia Petroleum Co.*, 141 F.2d 934, 937 (5th Cir. 1944) (interpreting a statute appointing a trustee to hold property in trust for the benefit of an incompetent person and holding that "it is quite clear that the trust in question here was neither resulting nor constructive, but an express trust created for the purpose of enabling [the trustee], to deal freely with [the property]").

The trust created under Chapter 181 of the Texas Agriculture Code fits neatly within the definition and purpose of an express trust. Chapter 181 was enacted to protect dairy farmers by declaring that the proceeds from the sale of milk will be held in trust for the benefit of unpaid dairy farmers who supplied milk. The principles of implied trusts are simply not applicable because Lone Star is not requesting that the court create and enforce a legal fiction for equitable reasons. Such a legal fiction is unnecessary when chapter 181 explicitly sets out Lone Star's rights as a trust beneficiary.

*The Dairy Product Proceeds were Never Property of the Debtor*

Defendants argue that on and prior to the Petition Date, and as of the time Lone Star delivered milk to Americana, Ontario had a previously existing, validly perfected, first priority security interest in substantially all of Americana's assets, which included, among other things,

all inventory, farm products and receivables, which extended to all proceeds, products, rents and proceeds thereof.

The Defendants make the argument that since Ontario had a prior perfected lien, Lone Star cannot "prime" its lien rights as to the proceeds from the dairy products produced with Lone Star's raw milk. They assert that, on the Petition Date, Lone Star was an unperfected trust beneficiary, and that neither Texas law nor the Bankruptcy Code allows Lone Star's "lien" to jump ahead of Ontario's pre-existing first lien. They argue that since the Texas Milk Statute is silent on the issue of how the milk trust ranks vis-à-vis a valid prior lien, Lone Star occupies the status of a constructive trust beneficiary, which is the equivalent of an unperfected lien creditor, and must take subject to the Lender's pre-existing valid lien. *See MBank Waco, N.A. v. L. & J., Inc.*, 754 S.W.2d 245, 251 (Tex. App.—Waco 1988, writ denied) (holding that a constructive trust beneficiary holds the status of an unperfected lien creditor and must yield to the superior status of a perfected secured party under UCC Article 9).

However, as stated clearly in the statute, "funds held in trust by a milk processor in an escrow account <u>are the property of the dairy farmer</u>." TEX. AGRIC. CODE ANN. § 181.002(f) (Vernon 2004) (emphasis added). Therefore, contrary to the argument made by the Defendants, the language in the Texas Milk Statute cannot be clearer in demonstrating that the dairy product proceeds are the property of Lone Star. These proceeds never became property of the Debtor, and Ontario's lien never attached.

### E. Tracing is not Required by Chapter 181

The Defendants next argue that Chapter 181 contains an implicit tracing element, requiring dairy farmers to specifically identify which products contained the specific raw milk that they sold to the milk processor. Section 181.002(a), provides that "a milk processor shall

hold in trust all payments received from the sale of milk for the benefit of the dairy farmer from whom the milk was purchased until the dairy farmer has received full payment of the purchase price for the milk." TEX. AGRIC. CODE ANN. § 181.002(a) (Vernon 2004). Based on this language alone, the presence of a tracing requirement is uncertain.

However, a look to section 181.002(b) clarifies the issue. Section 181.002(b) allows a dairy farmer to request an escrow account for the benefit of the dairy farmer, and in the event that the dairy farmer requests an escrow account, the milk processor must then deposit into the escrow account "all payments received from the sale of *any* milk or dairy product." TEX. AGRIC. CODE ANN. § 181.002(b) (Vernon 2004) (emphasis added). Section 181.002(c) goes on to provide for deposits into escrow of the proceeds referred to in subsection (b) based on the proportion of the milk processor's raw milk that the dairy farmer supplied. Such a mechanism clearly contemplates the commingling of raw milk from multiple dairy farmers and does not require tracing. The Court concludes from the language in Chapter 181 (along with the practical impossibility of tracing a product such as raw milk) that the statute does not contain an implicit tracing element requiring dairy farmers to specifically identify which products contained the specific raw milk that they sold to the milk processor.

A holding based on this line of reasoning is not without precedent. One analogous statute that has been interpreted in a similar manner is the Perishable Agricultural Commodities Act ("PACA"), 7 U.S.C. § 499a, *et seq*. *See In re Fresh Approach*, 51 B.R. 412, 422 (Bankr. N.D. Tex. 1985). PACA, like Chapter 181, creates a trust for the benefit of certain of the debtor's vendors.[5] *Fresh Approach* involved a supplier of produce that properly preserved its PACA rights and, after the debtor filed for bankruptcy protection, the producer filed a motion for the turnover of its trust property. *Id.* at 422. The trustee objected, and the court considered, among

---

[5] While Chapter 181 applies to dairy farmers, PACA applies to producers of perishable agricultural commodities.

other issues, whether the trust claimant was obligated to trace the proceeds from the sales of the produce.  In response to the debtor's demand that the claimants trace the assets to which the PACA trust applies, the court held that the "legislative history [of PACA] emphasizes that no specific tracing of inventory or proceeds is required (nor, as a practical matter, could such tracing be accomplished).  Looking again to the cases construing the PSA trust provision . . . it is clear that the PSA trust beneficiary is not required to carry the burden of tracing; indeed, it is the Debtor who must determine which assets, if any, are *not* subject to the trust." *Id*. (citing *In re Gotham Provision Co.*, 669 F.2d 1000, 1011 (5th Cir. 1982)).  The court stressed that requiring the trust claimant to trace the funds when the trust proceeds were commingled with other funds would be "virtually impossible," and that requiring such tracing would defeat the entire purpose of the statute.  *Id*.

Likewise, the Fifth Circuit has held that tracing is not required when applying the statutory trust under the Packers and Stockyards Act because, "due to the nature of the meat packing business where, once slaughtered, animal carcasses are quickly cut into meat products and commingled, it is a practical impossibility to identify which receivables correspond to which seller's livestock."  *In re Gotham Provision Co.*, 669 F.2d at 1011.  The difficulty of tracing is even more evident with a completely fungible product such as milk.


**F.    Attorneys' Fees**

Based on this ruling, Lone Star is entitled to interest and attorneys' fees on its remaining claims.  The Texas Milk Statute provides:

A milk processor who fails to pay for raw milk as provided by this chapter is liable to the dairy farmer for:

(1) the purchase price of the raw milk;

    (2) interest on the purchase price at the highest legal rate, from the date possession is transferred until the date the payment is made in accordance with this chapter; and

    (3) a reasonable attorney's fees for the collection of the payment.

TEX. AGRIC. CODE ANN. § 181.005 (Vernon 2004).  Lone Star has submitted its request for interest and attorney's fees based on the inclusion of both the claims of its members and the claims of the associated cooperatives for which it sold milk to Americana.  The Court finds that Lone Star needs to resubmit its request based on its oral motion at the hearing to drop any asserted recovery for those three non-member cooperatives.  The Court will then rule on the motion, and Lone Star can then prepare a judgment based on this ruling for the Court's entry.

## V.        CONCLUSION

The Texas Legislature's protections for Texas dairy farmers enacted in chapter 181 of the Texas Agriculture Code are a valid exercise of state law and are enforceable in a bankruptcy proceeding.  If a dairy farmer complies with the requirements of the statute, a trust is created for the benefit of the dairy farmer supplying milk.   In this case, Lone Star has exhibited by competent summary judgment evidence that it has complied with the elements of the statute, and is therefore entitled to summary judgment.

###END OF MEMORANDUM OPINION###